# EXHIBIT 1

## STATE COURT OF MICHIGAN

## IN THE MACOMB COUNTY CIRCUIT COURT

JUANA GISSENDANNER,                                  Hon.  JOSEPH TOIA

Plaintiff,

v.                                                   Case. No.: 2021-0464 -CK

RIVERSOURCE LIFE INSURANCE COMPANY

Defendant.

---

Ari Lehman (P68862)
Lehman Law PLLC
Attorney for Plaintiff
309 S. Gratiot, Suite B
Mount Clemens, MI 48043
248-817-8000
Fax: 866-591-3680
alehman@lehmanlawpllc.com

---

## **COMPLAINT AND JURY DEMAND**

**There are no previously filed actions between the parties or relating to the transactions or occurrences of this complaint.**

**This case does not qualify for the business court.**

1

## THE PARTIES

1.  Plaintiff, Juana Gissendanner is a resident of Macomb County Michigan and an insured party of defendant.

2.  Defendant RiverSource Life Insurance Company (hereinafter "Insurance Company") is a Minnesota based company that insures people throughout the entire United States, including the State of Michigan and is the successor to IDS Life Insurance Company.

## JURISDICTION

3.  Jurisdiction is proper in the State of Michigan because the incidents giving rise to this claim occurred in the state of Michigan, plaintiff is a Michigan resident and the defendant does extensive business throughout the State of Michigan.

4.  Venue is proper in the Macomb County Circuit Court because the events that gave rise to this litigation occurred in Macomb County and the amount in controversy is more than $25,000.

## THE ALLEGATIONS

5.  On December 15, 1994, Ms. Gissendanner purchased a disability policy from the Insurance Company. **Exhibit 1**.

6.  The policy contained a provision stating that:

    > This policy contains the Occupation Protection Option that you applied for.   In this policy, "total disability" is defined to allow you to be considered totally disabled even if you work in an occupation that is not your regular one.

    > For example, suppose that your regular occupation is "neuro-surgeon". Suppose you become disabled.  If you cannot perform neuro-surgery, but can teach neuro-surgery at a medical school, we will still consider you totally disabled and eligible for the total disability benefit.

7.  Mrs. Gissendanner was not a neurosurgeon. But she was part of the medical profession and

2

was a dental hygienist.

8. That was until she was in a car accident in 1997 and suffered permanent debilitating injuries.

9. And just like the example cited insurance policy, Mrs. Gissendanner was not able to continue in her profession as a dental hygienist, but she was able to teach at dental hygiene schools.

10. Therefore, in accordance with the terms of the policy, Mrs. Gissendanner was deemed fully disabled, and was paid $2080 per month, at least for the first 21 plus years of her disability.

11. The Insurance Company did require that Mrs. Gissendanner engage in occupational therapy, which she did, but despite the continual occupational therapy that she engages in, her prognosis is that she will never be able to work as dental hygienist again.

12. Despite complying with all of the requests of the the Insurance Company, and the fact that there has been no change her condition, in 2019, more than 20 years after paying the full disability claims without fail, the Insurance Company suddenly decided that it was reinterpreting its policy and ignoring the provision that stated that a person would still be considered totally disabled if that person worked as a teacher in their trained profession.

13. The Insurance Company's explanation for this sudden change was that the previous interpretation was wrong, and that the policy did not classify an insured as fully disabled when the person works as a teacher in their profession that they were disabled from.

14. On September 19, 2019, the Insurance Company sent a letter to Mrs. Grissendanner that it was retroactively, for one year, declaring her only partially disabled and demanded a return of $16,910.40 in insurance payments. **Exhibit 2.**

15. Despite the numerous protests of Mrs. Grissendanner, ever since then the Insurance Company has been treating Mrs. Grissendanner as falling within the partially disabled category and has

3

been alleging that she is only entitled to partial disability payments. To make matters worse the Insurance Company is applying those partial disability payments to the $16,910.40 balance that it alleges that she owed for the previous year.

16. As a result, Mrs. Gissendanner has not received any payments from the Insurance Company since they made this wrongful interpretation of its policy. The last payment that she received from the Insurance Company was the May of 2019 payment.

17. The policy provides benefits until Mrs. Grissendanner turns 65, so she is due payments through December of 2030.

18. Her monthly payment for full disability is $2080.

19. Therefore, she is owed $289,120 through the end of her policy.

20. Mrs. Gissendanner, in reliance on the requirement that she continue occupational therapy in order to continue to receive full benefits, has turned down full-time teaching positions and has only been able to work part-time as a teacher.

## COUNT I – BREACH OF CONTRACT

21. Plaintiffs repeat and re-allege paragraphs 1-20 above.

22. The parties had an insurance contract which required the Insurance Company to pay Mrs. Grissendanner full disability benefits if she was not able to work in her field, even if she could teach in her field.

23. Between the time that she was disabled from a car accident in 1997 until May of 2019, the Insurance Company honored its contract and paid Mrs. Grissendanner as a fully disabled insured.

24. However, after the May 2019 payment, the Insurance Company breached the provision of the

insurance contract that granted full disability pay when working as a teacher in a field that you could no longer perform in, and suddenly classified Mrs. Grissendanner as partially disabled.

25. Even if the parties contract could be read to ignore an express and explicit provision that provided for full disability benefits in the exact situation that Mrs. Grissendanner found herself in (and it cannot), the Insurance Company would still be estopped by waiver for agreeing to interpret the contract this way for over 21 years, and Mrs. Grissendanner planning her life and what remained of career around this decision.

26. As a result of the Insurance Company's breach of the insurance contract Mrs. Grissendanner has been damaged in the amount of $289,120, which includes all payments for which she is entitled to for the remainder of the breached contract.

## COUNT II – BAD FAITH DENIAL OF INSURANCE CLAIM

27. Plaintiffs repeat and re-allege paragraphs 1-26 above.

28. The Insurance Company has no basis to after more than two decades of paying benefits in accordance with the insurance policy, to suddenly ignore clear and unambiguous provision in the policy that required that it pay an insured the full benefit amount, even where a party who could no longer work in their profession could still earn money teaching in their profession.

29. This sudden change in paid benefits, and attempt to make it retroactive for one year was done in bad faith for which no reasonable person could think that such an explicit provision in a policy should suddenly be ignored approximately 22 years later.

30. Because the denial of full disability benefits was in bad faith, the Insurance Company is responsible to pay all of plaintiff's costs and attorney fees associated with this litigation.

## COUNT III – PUNITIVE DAMAGES

31. Plaintiffs repeat and re-allege paragraphs 1-30 above.

32. Without any justifiably legal basis, and without concern for how their refusal to follow a clear contractual provision has turned Mrs. Grissendanner's life upside down, the Insurance Company has taken wholly unjustified action, in the hope that if it denies enough claims without reason it will be profitable to do so in the aggregate.

33. Deterrent is needed for such devious attempts to skirt clear contractual obligations.

34. Therefore, plaintiff requests punitive damages to see that the Insurance Company's behavior is not rewarded financially, and that it does not do this to others.

**Wherefore**, plaintiffs pray that the Court grant, through a jury, damages plus interest, costs, and all expenses related to collection, attorney fees and punitive damages.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**

Dated: February 1, 2021

Ari Lehman
Lehman Law PLLC

FILED

2021 FEB -4  AM 10: 41

MACOMB COUNTY CLERK
MT. CLEMENS, MICH.

**EXHIBIT ONE**

REDACTED



**IDS Life Insurance Company**
IDS Tower 10
Minneapolis, Minnesota 55440

# Income Protection Plan

### Disability Income Insurance Policy

- **Non-cancellable and guaranteed continuable to age 65.**
- **Benefits paid for total and partial disability.**
- **Conditionally continuable to age 72.**
- **Nonparticipating (does not pay dividends).**

Insured:     Juana D Gissendanner

Basic
Monthly
Income:     $1,500 per month

Policy Number:     ████████9496

Policy Date:     December 15, 1994

**Please read your policy carefully.** It is a legal contract between you and us, IDS Life Insurance Company, A Stock Company. We have issued this policy on the basis of your application and premiums paid in advance from the policy date.

### Our guarantee to you

We promise to pay the benefits provided by this policy subject to its terms herein. The policy is noncancellable and guaranteed continuable to age 65. This means that until you reach age 65, as long as the premiums are paid on time:

1. We will not cancel your policy for any reason.

2. The benefits and premiums shown under Policy Data will not be changed.

3. No restrictions will be added to the policy for any reason.

4. We will not reduce your benefits if you change jobs.

Certain losses are not covered by this policy.

1. We will not pay benefits for any loss or disability that we have excluded from this policy by name or specific description.

2. During the first two years the policy is in force, we will not pay benefits if loss or disability is caused by a sickness or physical condition that existed before the effective date of coverage but was not disclosed on your application.

3. Other exceptions are explained on page 9.

**You have the right to examine this policy for 10 days -**
You have ten days to decide if this policy is the right choice for you. If you are dissatisfied with it for any reason, just return it to your IDS representative or to our home office within 10 days after you receive it. We will cancel the policy and refund all premiums you have paid. This policy will then be considered void from its start.

### Questions?

We have tried to make this policy easy to understand. Feel free to contact us if you have any questions.

Signed for and issued by IDS Life Insurance Company in Minneapolis, Minnesota, as of the policy date shown above.

**President:**

*James A. Mitchell*

**Secretary:**

*William A. Stoltzmann*

30208-MI

# Table of Contents

**Definitions**

Important words and meanings you should know/Page 5

**Benefit Provisions**

Basic Monthly Income amount; When it starts; How long it is payable; Waiver of premium benefit/Page 6

**Exceptions**

Losses that are not covered by this policy/Page 9

**Continuing the Policy After Age 65**

How you can continue coverage from age 65 to 72/ Page 10

**Claim Provisions**

How to file a claim for benefits; When you should provide proof of loss; When and to whom we will pay benefits/Page 11

**Premiums**

Premium payment information; Grace period for overdue premiums; Reinstating a lapsed policy/Page 12

**General Provisions**

Misstatement of age; Assigning policy benefits; Suspending the policy during military service/Page 14

**The Insurance Contract**

The entire contract between you and us; When the policy becomes incontestable; How state laws affect the policy/Page 15

REDACTED

Policy Data

**Insured:**  Juana D Gissendanner

**Policy Number:** ████ 9496

**Basic Monthly Income:**  $1,500 per month

**Policy Date:** December 15, 1994

Schedule of Benefits and Annual Premiums

| | | Premiums |
|---|---|---|
| **Benefits** | | $641.10 |
| Basic Monthly Income | | |
| Benefit Rate - | $1,500 per month | |
| Benefit Starting Date - | 91st day of disability | |
| Maximum Benefit Period - | To the policy anniversary on or next following the insureds 65th birthday | |
| | | 12.18 |
| Future Purchase Option | | |
| Option Amount - | $200 per option date | |
| Expiry Date - | December 15, 2014 | |
| Premiums payable until - | December 15, 2014 | 205.23 |
| Social Benefits Rider | | |
| Benefit Rate - | $580 per month | |
| Benefit Starting Date - | 91st day of disability | |
| Maximum Benefit Period - | to age 65 or as limited in accordance with rider provisions | |

Refer to "Continuing the Policy After Age 65" in the policy for information about the premiums, monthly income payable, benefit starting date, and maximum benefit period that will apply if you choose to extend this policy after age 65.

Total annual premium -   $858.51

Total premium for policy as of the policy date is: $858.51 annually, or $431.37 semi-annually, or $222.00 quarterly, or $75.12 monthly.

Page 3

# Definitions

The following words are used often in this policy. When we use these words, this is what we mean:

**age**

When used in terms such as "age 65", age means the policy anniversary on or next following your corresponding birthday.

**disability, disabled**

Your total or partial disability.

**injury**

Accidental bodily injury that occurs while this policy is in force.

**monthly earnings**

Income earned for your personal services. It includes wages, salaries, bonuses, commissions and professional fees. It also includes net earnings from self-employment before income taxes.

**monthly earnings before disability began**

Means the greater of:

1. Your average monthly earnings for the six calendar months just before disability began; or

2. Your average monthly earnings for the two calendar years just before disability began.

**policy anniversary**

The same day and month as the policy date each year that this policy remains in force.

**policy date**

Your policy date is shown under Policy Data. It is the date used to determine policy anniversaries, policy years, policy months, and premium due dates.

**partial disability**

Partial disability means that, although you perform one or more important duties of your regular occupation:

1. Because of injury or sickness, your monthly earnings are reduced to 80% or less of your monthly earnings before disability began; and

2. You are under the regular and personal care of a licensed physician other than yourself.

**sickness**

Disease or illness that first appears while this policy is in force.

**total disability**

Total disability means that because of injury or sickness, you are:

1. Unable to perform the important duties of your regular occupation; and

2. Under the regular and personal care of a licensed physician other than yourself.

**we, our, us**

IDS Life Insurance Company

**you, your**

The person who is the insured and the owner of this policy. The name of insured and owner is shown under Policy Data on page 3.

# Benefit Provisions

## Total Disability Benefits

**For total disability, you will begin to receive benefits after the benefit starting date.**

If you are disabled until the benefit starting date, benefits will be payable for total disability on and after the benefit starting date. Benefits will be paid at the Basic Monthly Income benefit rate shown under Policy Data. Total disability benefits will be paid only while you are totally disabled.

For example, suppose that your normal full-time earnings were $2000 a month, your Basic Monthly Income was $1000 a month, and the benefit starting date was the 91st day of disability. Suppose you became totally disabled. The 91st-day benefit starting date means that you would not receive the $1000 a month for the first 90 days of disability. After those first 90 days, however, you would receive the $1000 a month as long as your total disability continued--up to the end of the maximum benefit period.

**You can qualify as totally disabled even if you work outside of your regular occupation.**

This policy contains the Occupation Protection Option that you applied for. In this policy, "total disability" is defined to allow you to be considered totally disabled even if you work in an occupation that is not your regular one.

For example, suppose that your regular occupation is "neuro-surgeon". Suppose you become disabled. If you cannot perform neuro-surgery, but can teach neuro-surgery at a medical school, we would still consider you totally disabled and eligible for the total disability benefit.

**Benefits are payable, during continuous disability, until the end of the maximum benefit period.**

The maximum benefit period shown under Policy Data is the longest period of time for which we will pay benefits for any period of continuous disability. The entire period of disability, whether total and/or partial disability, will be applied to the maximum benefit period.

We will not pay the basic monthly income benefit beyond age 65 unless:

1. Your maximum benefit period is "lifetime"; or

2. Total disability payments begin after age 63. In that case, we would continue payments for up to 24 months or until the end of the maximum benefit period, whichever was the shorter period.

**You receive full benefits for certain major losses even if you are able to return to work.**

Some losses from injury or sickness will be considered total disability if they occur while this policy is in force and prior to age 65. Even if you can work, you are eligible to receive benefits if you totally and irrecoverably lose any of the following:

1. Sight in both eyes;

2. Hearing in both ears;

3. Speech;

4. Use of both hands;

5. Use of both feet; or

6. Use of one hand and one foot.

For any of these losses, benefits will accrue from the date of loss and will continue until the end of the maximum benefit period. You do not have to be under the care of a physician for you to receive benefits in these cases.

## Partial Disability Benefits

**You may be eligible for partial disability benefits if you can work but earn less than before.**

We will pay you benefits for continuous partial disability if:

1. Disability begins before age 65; and

2. Disability continues to the benefit starting date shown under Policy Data.

Partial disability benefits will begin to accrue on the later of:

1. The day after total disability ends; or

2. The day when disability has continued to the benefit starting date shown under Policy Data.

Before we pay any benefit, we have the right to require reasonable proof from you that monthly earnings have been reduced.

**The amount of the benefit depends on your monthly earnings.**

The Basic Monthly Income benefit rate shown under Policy Data is the amount payable for total disability. To compute the portion of the benefit rate to pay you for partial disability, we will use the following formula:

$$\frac{A - B}{A} \times \text{Basic Monthly Income}$$

where:

A = Monthly earnings before disability began; and

B = Monthly earnings in the month for which partial disability benefits are being claimed.

For example, suppose that your normal full-time earnings (A) were $2000 a month, your Basic Monthly Income was $1000 a month, and your earnings in a month of partial disability (B) were $500. By using the above formula, we would compute that month's partial disability benefit as follows:

$$\frac{2000 - 500}{2000} \times 1000$$

$$= .75 \times 1000$$

$$= \$750$$

We would pay you 75% ($750) of your Basic Monthly Income as that month's partial disability benefit, since you earned only 25% ($500) of your normal full-time earnings.

We would compute your disability benefit month by month, since your earnings could vary from month to month during your partial disability.

**Benefits are payable during partial disability until the end of the maximum benefit period or age 65.**

During partial disability, we will pay benefits until the earlier of:

1. The end of the maximum benefit period shown for the Basic Monthly Income benefit under Policy Data. The entire period of disability, whether total and/or partial disability, will be applied to the maximum benefit period.

2. Age 65.

## her Benefit Provisions

**mefits may be paid at a daily rate.**

For any given day of disability, benefits will be paid for either total or partial disability, but not for both.

To compute the benefit for part of a month, we will use a daily rate of 1/30th of the benefit for a full month.

**ecurrent disability is treated as a continuation of a prior period of disability.**

We will consider a later period of disability to be a recurrence of a prior period of disability if:

1. Benefits were payable for the prior period of disability; and

2. The prior and later periods of disability were due to the same or related causes; and

3. There were up to 6 consecutive months in which you were not disabled between the prior and later periods of disability.

If disability is recurrent, both the prior and later periods will apply toward the same benefit starting date and maximum benefit period.

If disability is not recurrent, both the benefit starting date and the maximum benefit period will run anew for the later period of disability.

**oncurrent disability does not change the benefit.**

Concurrent disability is the result of more than one injury or sickness, or of both an injury and a sickness. Benefits will be paid

as if the disability were the result of only one injury or sickness.

**ou pay no premiums after 90 consecutive days of disability.**

After 90 consecutive days of disability, we will waive any premium that becomes due during continuous disability before age 65. Your policy and its benefits will continue as though the premium had been paid. If any premium was due and paid in the first 90 days of disability, we will refund it to you.

If you recover before age 65 from a disability for which we have waived premiums, this policy will stay in force until the next premium due date. You must then resume paying premiums when they are due.

**After 6 months, this policy covers disabilities resulting from cosmetic or transplant surgery.**

After this policy has been in force for six months, we will pay benefits for total disability that results from cosmetic surgery or from the transplant of part of your body to

that of another person. Cosmetic surgery means any surgical operation to improve appearance or to prevent disfiguration.

**When coverage begins and ends.**

Coverage under this policy begins at 12:01 A.M. Standard Time where you reside as of the date specified in the application form. Coverage ends at 12:01 A.M. Standard Time where you reside on the date any renewal premium is not paid by the end of the

grace period. Until Age 65, you may renew this policy for a new term period by paying the premium within the 31 day grace period. The new term begins when the old term ends.

# Exceptions

**Certain disabilities and losses are not covered by this policy.**

We will not pay benefits for disability or loss resulting from any of the following:

1. War, or any act of war, declared or undeclared; or

2. Normal pregnancy or childbirth if the pregnancy existed on the policy date. This exclusion does not apply to pregnancies that begin after the policy date.

   We will cover disability caused by complications of pregnancy or childbirth at any time. Complications are not pregnancy or childbirth; they are affected or caused by pregnancy or childbirth. Here are examples of such complications:

   - Post partum hemorrhage;
   - Toxemia;
   - Rupture or prolapse of the uterus;
   - Non-elective caesarean section;
   - Ectopic pregnancy which is terminated;
   - Spontaneous termination (miscarriage) of a pregnancy when a live birth is not possible; and
   - Similar severe medical and surgical conditions.

   We will not cover certain conditions, as in the following examples, that are related to pregnancy or childbirth, but are not "complications".

   - Elective abortion, false labor, occasional spotting;
   - Rest prescribed by a physician, morning sickness;
   - Elective caesarean section; and
   - Similar conditions related to the management of a difficult pregnancy.

# Continuing the Policy

## After Age 65

**You may be able to extend your coverage for total disability until age 72.**

While this policy is in force, you may arrange to have the total disability coverage of this policy continued yearly until age 72. You may do this if:

1. You remain gainfully employed on a regular full-time basis; and

2. You pay the premiums when they are due.

During this period, you can continue coverage for the basic monthly income amount that is in force at age 65.

You cannot continue coverage for partial disability. You cannot continue any rider that provides additional benefits.

If total disability begins on or after age 65, your benefit starting date will be the 31st day of total disability.

**Your maximum benefit period will be either 12 or 24 months.**

Your maximum benefit period for disability will be 24 months. If, however, the maximum benefit period is 12 months under this policy, it will be 12 months under the extended policy.

**Your premium rate may change after age 65.**

Each year you continue this policy beyond age 65, your premium rates will be based on our table of premium rates then in effect for your age. We may change the rates on the extended policy at any time. Any change, however, will apply only to premiums due after the effective date of the change. Any change will also apply to all other persons of the same age and risk rating who have policies of this type in your state.

**The extended policy terminates if you stop working.**

If you are no longer gainfully employed on a regular full-time basis (except because of total disability), this policy will terminate as of the next policy anniversary. The termination will not affect any benefit you may be receiving for a loss that occurred before the termination.

While the extended policy is in force, we have the right at any time to require proof that you are gainfully employed on a regular full-time basis.

**The extended policy terminates at age 72.**

All coverage under the extended policy ends at age 72. If, however, we accept a premium that covers any period of one year or less beginning on or after age 72, your coverage will continue until the end of that period.

30208-MI

# Claim Provisions

These are the steps you and we must follow in order for you to receive benefits under this policy.

## 1. You must notify us in writing within 30 days.

Within 30 days after disability begins (or as soon as reasonably possible), you must give us written notice of your claim. We don't need complete details at this point--just give us your name and policy number and tell us that you want to make a claim. Send this notice to our home office or give it to your IDS representative.

## 2. We will send you claim forms.

We will provide you with claim forms within 15 days after we receive your written notice. If for some reason you do not receive the claim forms, write us a claim letter. In your claim letter, tell us the cause of your disability and the extent of your loss.

## 3. You must give us proof of loss within 90 days.

Using either our claim forms or your claim letter, send proof of loss to us at our home office as soon as possible. We must receive proof of loss within 90 days of the end of each period of disability for which we are liable.

If it is not reasonably possible for you to give proof within 90 days, your claim will still be handled normally if you give us proof as soon as possible. But unless you are legally incapacitated, written proof must be given within one year of the time it is otherwise required.

As part of establishing proof of loss, we have the right to have a physician examine you. This will be done at our expense and at reasonable intervals.

## 4. We will begin to pay benefits to you.

As soon as we receive acceptable written proof of loss, we will pay any benefit due for each full month you are disabled; we will pay you 1/30th of the monthly benefit for each day of a disability lasting less than one month.

Benefits will be paid to you or your estate unless you have assigned them to someone else. If benefits become payable to an estate, a minor, or someone not able to give a valid release for the payment, we can pay an amount up to $1,000 to one of your relatives if we believe he or she is entitled to it. If we make such a payment in good faith, we will not be liable to anyone for that amount.

## 5. There are limits as to when you can take legal action against us.

You have the right to take legal action against us to settle a claim for benefits from this policy. No legal action, however, may be brought for this purpose:

a.  Until 60 days following the date written proof of loss was given; or

b.  More than six years after the date written proof of loss is required to be given.

# Premiums

**Your premiums stay the same as long as this policy is in force.**

We cannot increase your premiums even if you switch to a more hazardous occupation

or if you receive benefits from this policy many times.

**When and how often premiums are due.**

Your first premium is due as of the policy date. All other premiums are payable on or before the premium due date. Premium due dates will occur after the policy date at the intervals you choose. Premiums must be paid or mailed to us at our home office, or paid to your IDS representative in exchange for a receipt.

You may choose one of the following intervals to pay your premiums.

**Annual -** Due once a year on each policy anniversary date;

**Semiannual -** Due every six months; and

**Quarterly -** Due every three months.

The premium, as of the policy date, for each of these intervals is shown under Policy Data. A premium payment at an interval not shown here must be approved by us.

**You can choose another interval for premium payments.**

You can select a different interval for future premium payments, as long as one of the premium due dates falls on the policy anni-

versary date each year. No change in interval is allowed while you are disabled.

**Premiums must be paid until age 65--but there is a grace period.**

To keep this policy in force, you must pay all premiums due during your lifetime until age 65. There is, however, a 31-day grace period for all premiums except the first one.

If a premium is not paid by its due date, this policy will remain in force for 31 days fol-

lowing that date. You can pay the premium any time during the 31 days as long as it is received in our home office before the end of the grace period.

If you do not pay the premium by the end of the grace period, this policy will lapse.

**If this policy lapses, you may be able to reinstate it.**

If we accept your premium without requiring you to fill out a reinstatement application, this policy will be reinstated. The reinstatement date will be the date we accept the premium.

If we do require a reinstatement application, you will have to pay the premium and give evidence of your insurability. We will give

you a conditional receipt for your premium. If we approve your application, this policy will be reinstated as of the date of our approval. If we reject your application, we must do so in writing within 45 days of the date of the conditional receipt, or this policy will be considered reinstated on the 45th day.

30208-MI

**Coverage will be basically the same on the reinstated policy.**

The reinstated policy will cover only injury that occurs after the date of reinstatement and sickness that begins more than ten days after the date of reinstatement. Except for this and any new provision that you agree to accept as a condition of reinstatement, both your rights and ours will be the same as before this policy lapsed.

**Other premium information.**

If a premium is due on your policy when we pay a claim, we will subtract the unpaid premium from the claim payment.

That part of any premium paid for the period after your death will be refunded when we receive proof of death.

# General Provisions

## We may change your benefits if your age was misstated on your application.

If we discover that your age was misstated, we will change your policy so the benefits are those that your premium would have purchased at the correct age. If coverage would not have been available, we will cancel this policy and refund the premium paid.

## You can assign this policy's benefits.

The benefits provided under this policy can be assigned. To do this, you must send our home office a copy of the assignment. We are not responsible for determining if the assignment is valid.

The assignment of benefits only affects payments that we make and actions that we take after the assignment is recorded at our home office. We will not change any payment made or action taken before the assignment was recorded.

An assignment is not a change of ownership. An assignee is not an owner as these terms are used in this policy.

## You can suspend this policy if you enter the military.

If you send a written request to our home office, we will suspend this policy from the date you enter military service. We will refund that part of any premium paid for the suspended period.

Military service means full-time active duty in the armed forces of any country or international organization. It does not mean active duty for training only that lasts 31 days or less.

If you are released from military service within 5 years from the date you entered, the suspended policy can be restored without evidence of insurability. You must send us a written request and pay the required premiums within 90 days of the end of your military service.

If the suspended policy is not restored within the above time limits, you may be able to reinstate it according to the reinstatement provision. (See the Premiums section.)

# The Insurance Contract

**This policy plus your application are the entire contract.**

This policy and the application or the copy of the application attached to it make up the entire contract between you and us.

No one except one of our corporate officers (President, Vice-President, Secretary or Assistant Secretary) can change or waive any of our rights or requirements under this policy. That person must do so in writing. No other persons have the authority to change or waive any of our rights or requirements.

**This policy becomes incontestable after two years.**

After this policy has been in force for two years during your lifetime (excluding any time you are disabled), we cannot contest the statements in your application.

Unless a disease or physical condition is excluded from the policy by name or specific description, no claim for loss incurred or disability beginning after two years from the policy date will be reduced or denied because the disease or condition existed before the policy date.

**State laws affect this policy.**

If, on the policy date, any provision conflicts with state laws where you reside, we will consider the provision changed to meet the minimum requirements of those laws.

30208-MI

# Future Purchase Option Rider

This rider was issued on the basis of your application and premium payment for this rider. This rider is made a part of the policy. This rider is subject to all terms, exceptions, and provisions of the policy unless changed by this rider. All changes are explained below.

## This rider allows you to request an increase in the Basic Monthly Income benefit rate.

This rider gives you the right to request, at certain times called "option dates", an increase in the Basic Monthly Income benefit rate payable under your policy. The Basic Monthly Income benefit rate is shown under Policy Data.

You are not required to give us any evidence of good health when you make your request for an increase. Any such increase is subject to the terms of this rider, however.

## You can request an increase to take effect on any option date.

To request an increase in your benefit rate, just send us your request in writing within the 60 days prior to an option date and tell us the increase you want.

Option dates occur every 2 years from this rider's effective date. You can request an increase for each option date that falls on or before the Expiry Date shown for this rider under Policy Data.

On the first option date after this rider's effective date, you may request an increase of up to twice the Future Purchase Option amount shown under Policy Data. On subsequent option dates, you may request an increase of up to the Future Purchase Option amount. In either case, you may request less than the maximum amount.

You may decide not to request an increase on an option date. If so, you may "carry forward" that option date. At the next option date, you may request the carried-forward increase, up to the Future Purchase Option amount. You may also request any increase for which you may qualify at that time.

## We will approve or reject your request.

To decide whether to approve your request, we will consider your monthly earned income, the current benefit rate for your policy, and any other coverage you may have. We have the right to reject your request, or a part of it, based on the following rules:

1. Your monthly earned income must meet our published income limits then in effect for the new benefit rate.

2. The new benefit rate of the policy, when added to all other disability coverage you may have, cannot exceed the maximum we then offer to new applicants. The maximum will be based on your class of risk and our published limits. (We take into account all similar coverage you have with us or other companies. We also take into account any state, provincial, and federal agency coverage which you may have.)

In this rider, "monthly earned income" means the greater of:

1. Your monthly earnings on the date of your request to increase the benefit rate; or

2. Your average monthly earnings during the 12 months just before the date of your request.

"Monthly earnings" means the income earned in one month for your personal services. It includes wages, salaries, bonuses, commissions, and professional fees. It also includes net earnings from self-employment before income taxes.

If, however, you are disabled on an option date and eligible for policy benefits, "monthly earned income" means your average monthly earnings during the 12 months just before you were disabled.

"Monthly earned income" does not include investment income or income not derived from your occupation.

30706A

7/86

## If we grant the increase, it takes effect on the option date.

We may approve all or part of the requested increase. The Basic Monthly Income benefit rate shown under Policy Data (or benefit rate previously increased under this rider, if applicable) will be increased by the amount we approve. The new benefit rate takes effect on the option date.

The effective date would be different, however, if you were disabled on the option date and eligible for policy benefits. The effective date for the new benefit rate would be delayed until the 91st day after the option date. We would start to pay the new rate at that time if you remained continuously disabled and were still eligible for benefits

## The premium for this policy will increase if the benefit rate is increased.

If we approve your request for an increase in the benefit rate, you must pay the additional premium for that increased benefit no later than 31 days after the option date. If we are waiving premiums for the policy on the option date, your premium for the increase will not be due until the next premium on the policy is due.

The additional premium for each increase in the benefit rate will be based on the following:

1.  The amount of the increase;

2.  Your attained age on the option date; and

3.  Your class of risk as of the policy date. If you are in a more favorable class of risk at the time of an increase, we will use that class.

## If we deny the increase, you may request it again.

If we reject all or part of your request for an increase, you may ask for the denied amount again at the next option date--but

not thereafter. In addition, you may request any increase for which you may qualify at that next option date.

## Only one increase is allowed while you are disabled.

If an option date occurs while you are disabled but otherwise eligible, you can still increase your benefit rate. We allow no more than one increase during a single period of

disability, however. This rule applies no matter how many option dates fall during that period.

## You must pay premiums for this rider.

You're required to pay a premium for this rider. The amount of this premium is shown under Policy Data. If the rider is terminated by you or us, the total premium for the en-

tire policy will be reduced by the premium for this rider. (See below for details on when this rider terminates.)

## The policy's incontestable provision applies to this rider.

After this rider has been in force during your lifetime for two years, we cannot contest the statements in the application for

this rider. The two year period will not include time in which you are totally disabled.

**This rider can be terminated.**

Coverage under this rider will end on the earliest of the following:

1. The first premium due date after you ask us in writing to cancel this rider; or

2. The date on which the grace period for the policy ends and any due premium has not been paid; or

3. This rider's expiry date as shown under Policy Data; or

4. The date the policy terminates.

This rider is issued as of the policy date of the policy unless a different date is shown here.

**IDS Life Insurance Company**

*William A. Stottzmann*

Secretary

30706A                                Page 3

# Social Benefits Rider

### Rider Benefits to be Offset
### by Social Benefits After One Year of Disability

This rider was issued on the basis of your application and premium payment for this rider. This rider is made a part of the policy. This rider is subject to all terms, exceptions, and provisions of the policy unless changed by this rider. All changes are explained below.

## This rider provides additional disability benefits.

We will pay you up to the rider benefit if: 1) your disability continues to this rider's benefit starting date, which is shown under Policy Data; and 2) the policy benefit is payable for such disability. (The policy benefit is the Basic Monthly Income amount payable under the policy. It is shown under Policy Data.)

The rider benefit is the amount payable under this rider for a month of total disability. The benefit rate for this rider is shown under Policy Data as a monthly amount. To compute the rider benefit for part of a month, we will use the daily rate of 1/30th of the rider benefit.

We will only pay the benefit during your total and continuous disability.

The rider benefit will accrue from this rider's benefit starting date. For example, suppose this rider's benefit starting date was the 91st day of disability. This means that you would not receive rider benefits for the first 90 days of your disability. Rider benefits would be payable for any total disability on and after the 91st day of disability.

## In your second year of disability, our payments will be reduced by social benefits.

Social benefits are made up of the following types of benefits payable to you and your family because of your disability: Social Security; federal, state, and local laws similar to Social Security; Workers' Compensation; and occupational disease benefits.

For the first 12 months of your disability, the amount payable for each month of total disability after the rider's benefit starting date is the rider benefit. (No benefits are payable until disability has continued to the rider's benefit starting date.)

After the first 12 months of your disability, the amount payable for a month of total disability is the rider benefit less whatever you receive in social benefits for that month.

For example, suppose the rider benefit rate was $500 a month, you became totally disabled, and began to receive social benefits of $300. In your first year of total disability, when social benefits have no effect on your rider benefit, we would pay you the full rider benefit of $500. After the first year of total disability, we would reduce our payment by your social benefits, and pay you $200 ($500 - $300).

If a month's social benefits are less than the rider benefit for that month, we will pay you the greater of:

1.  That month's rider benefit less that month's social benefits; or

2.  $100.

If a month's social benefits are equal to or greater than that month's rider benefit, we will pay you nothing for that month.

## If social benefits increase, we will not decrease our second-year payment.

As described above, we may reduce our payment to you because of social benefits that you receive. If your social benefits then increase, we will not further reduce our payment to you because of that increase.

To continue with the above example, if your social benefits increased from $300 to $400, we would still pay you $200.

30712A

**If social benefits end or decrease, our payment may increase.**

Social benefits may end because you no longer qualify. If this occurs after this rider's benefit starting date, and if the policy benefit is also being paid, the full rider benefit will be payable as of the date social benefits end.

If social benefits are decreased, we will begin paying you a higher amount, up to the full rider benefit. As described above, any monthly benefit that is payable will equal the rider benefit less whatever you receive in social benefits. We will begin paying you the higher amount as of the date your social benefits were reduced.

**When payment of benefits ends.**

We will continue to pay you the rider benefit until the earliest of the following:

1. The date on which your disability lasts beyond this rider's maximum benefit period. This rider's maximum benefit period is shown under Policy Data. It is the maximum length of time that we will pay the rider benefit for any one period of disability; or

2. The date on which you begin to receive retirement benefits under Social Security, or similar federal, state, or local laws; or

3. Age 65.

If social benefits would be paid except for this rider, we will not pay the rider benefit.

As described above, if a month's social benefits are equal to or greater than that month's rider benefit, we will not pay you anything for that month.

**After the first year, you must give us proof related to social benefits.**

After the first twelve months of disability, you must give us satisfactory proof of the following:

1. Your timely application for social benefits;

2. If applicable, denial of your application for social benefits; and

3. If applicable, the amount of social benefits that you are receiving.

If your application for social benefits is denied, we may require you to take the following steps:

1. File a request for a hearing and appeal; and

2. If your appeal is denied, reapply for social benefits from time to time at our request.

**Lump sum social benefits will be pro-rated.**

If you receive a lump sum social benefit, we will consider it paid over a number of months. We will compute the number of months by dividing the lump sum by the rider benefit. Then, beginning with the date of your disability, we will not pay the rider benefit until the computed number of months has passed.

This provision does not apply to retroactive lump sum benefits paid under Social Security.

**If you receive partial disability benefits under the policy, you may qualify for an increase in that benefit.**

You may qualify for an increase in the policy's partial disability benefit, if any, if:

1. You are partially disabled; and

2. The policy's partial disability benefit is payable.

The benefit rate for this rider, as shown under Policy Data, less social benefits you receive for a month, would be added to the policy benefit in computing the policy's partial disability benefit for that month. We would begin doing this after this rider's benefit starting date.

30712A

**You must pay premiums for this rider.**

You're required to pay a premium for this rider. The amount of this premium is shown under Policy Data. If the rider is terminated by you or us, the total premium for the entire policy will be reduced by the premium for this rider. (See below for details on when this rider terminates.)

**We have a limited right to change premiums.**

We may change the premium for this rider if your eligibility for one or more types of social benefits changes due to:

1. The repeal of, or a major change in, a social benefit program; or

2. Your establishment of residence in a foreign country.

In no event would the premium rate for each $100 of the rider benefit exceed the premium rate for each $100 of the policy benefit.

**The policy's incontestable provision applies to this rider.**

After this rider has been in force during your lifetime for two years, we cannot contest the statements in the application for this rider. The two year period will not include time in which you are disabled.

**This rider can be terminated.**

Coverage under this rider will end on the earliest of the following:

1. The first premium due date after you ask us in writing to cancel this rider; or

2. The date on which the grace period for the policy ends and any due premium has not been paid; or

3. The date the policy terminates; or

4. The date on which you begin to receive retirement benefits under Social Security or similar federal, state, and local laws; or

5. Age 65.

This rider is issued as of the policy date of the policy unless a different date is shown here.

**IDS Life Insurance Company**

*William A. Stottzmann*

Life Insurance Company
499
neapolis, MN 55440-0499
merican Express Company

# Life and Disability Income Insurance Application

~~I 102056.1 4~~   9496

## sured
ase provide both day and evening telephone numbers
y (810) **559-1559**  Evening (810) **726-6345**
st time to call _____ Day _____ Evening _____

### Other Insured Rider (OIR)
Please provide both day and evening telephone numbers
Day (810) **726-6345**  Evening (810) **726-6345**
Best time to call _____ Day _____ Evening _____

## ection A

**sured: Is insured the owner?** ☑ Yes ☐ No

☐ Mr. ☑ Mrs. ☐ Miss ☐ Ms.

nsured's name (first) (full middle) (last)
**JUANA D. GISSENDANNER**

Home address (street)
**42353 STANBERRY**

City, State, Zip
**STERLING HTS., MI 48313**

Social Security No.
[REDACTED]

| Birthdate | Marital status | State of birth | |
|---|---|---|---|
| [REDACTED] | **M** | **MI** | ☐ Male ☑ Female |

Citizenship ☑ U.S. ☐ Other _____

Occupation **DENTAL HYGENIST**   Self-Employed ☐ Yes ☑ No

| Individual occ. income | Net worth | Household income |
|---|---|---|
| **39,500** | $ **19,918** | $ **43,100** |

Employer name
**ROY M. ROSEN, D.D.S.**

Address (street)
**25415 SOUTHFIELD RD.**

City, State, Zip
**SOUTHFIELD, MI 48075**

### Other Insured Rider (OIR): Is OIR the owner? ☐ Yes ☑ No

☑ Mr. ☐ Mrs. ☐ Miss ☐ Ms.

OIR's name (first) (full middle) (last)
**TERRY MONROE GISSENDANNER**

Home address (street)
**42353 STANBERRY**

City, State, Zip
**STERLING HTS., MI 48313**

Social Security No.
[REDACTED]

| Birthdate | Marital status | State of birth | |
|---|---|---|---|
| [REDACTED] | **M** | **MI** | ☑ Male ☐ Female |

Citizenship ☑ U.S. ☐ Other _____

Occupation **ENTREPRENUER**   Self-Employed ☑ Yes ☐ No

| Individual income from occupation | Relationship to insured |
|---|---|
| $ **3,600** | **HUSBAND** |

Employer name
**T.J. GISS INDUSTRIES**

Address (street)
**42353 STANBERRY**

City, State, Zip
**STERLING HTS. MI 48313**

## wner (Complete if owner is different from insured or OIR)

☐ Mr. ☐ Mrs. ☐ Miss ☐ Ms.

Owner's name (first) (full middle) (last) _____   Birthdate _____ ☐ Male ☑ Female

| Individual occ. income | Net worth | Household income | Bus. Tax ID, Taxpr. ID or Social Security No. | Relationship to insured |
|---|---|---|---|---|
| $ | $ | $ | | |

ome address (street) (city) (state) (zip)

mployer name   Address (street) (city) (state) (zip)

## nerships

☑ **Individual**

☐ **Business:** ☐ Sole Proprietorship (03) ☑ S Corporation (01) ☐ Partnership (02) ☐ C Corporation (01)
**Type of Business Insurance:** ☐ Buy/Sell ☐ Business Debt Protection ☐ Split Dollar ☐ Key Person
☐ Other _____ ☐ Executive Bonus ☐ Deferred Compensation (nongovernmental)

☐ **Trust:** ☐ Revocable ☐ Irrevocable  Name of Trust _____
Date of Trust _____  Trustee taxpayer identification number _____
Name and address of Trustee _____

☐ **Other** _____
_____

(8/94)

# Section B

## 1. Life Insurance Plan

| Insured Amount $ | OIR Amount $ |
|---|---|
| 153,963 | 153,903 |

*(You must select either Option 1 or Option 2 for these plans)*

- [ ] **Life Protection Plus**
- [x] **Variable Universal Life II**
- [ ] **Variable Universal Life II 350**
- [ ] **1-Year Term**
- [ ] **10-Year Term**
- [ ] **Whole Life**
- [ ] **Other**

- [x] **Death Benefit Option 1:** Initial death benefit is insured amount.
- [ ] **Death Benefit Option 2:** Initial death benefit is insured amount plus accum. cash value. Cost of insurance is greater than Option 1.

**Variable Universal Life Allocations** *(complete financial suitability statement on signature page)*
Premium allocation: *(premium amount to be directed to specific investment options within policy)*
Monthly deductions: *(investment options within the policy from which the cost of insurance will be deducted)*

**Owner's tax bracket** __15__ % *(required for VUL policies)*

| Investment options | Premium allocation | Monthly deductions | Investment options | Premium allocation | Monthly deductions | Investment options | Premium allocation | ded |
|---|---|---|---|---|---|---|---|---|
| Fixed | 47 % | 100 % | Equity | 20 % | 0 % | 2004 Trust | % | |
| Income | % | % | Money market | % | % | 1995 Trust | % | |
| Managed | 33 % | 0 % | Gov't securities | % | % | Other | % | |
| | | | | | | | 100% | |

## 2. Life Insurance Riders

- [ ] Other
- [x] **Other Insured Rider (OIR).** *Complete OIR in Section A and OIR Amount $ and Beneficiary in Section B.*
- [ ] Waiver of Premium or Waiver of Monthly Deduction
- [ ] Accidental Death Benefit of _____
- [ ] Children's Insurance (CIR) _____ Units
- [ ] Family Insurance (FIR) _____ Units

} Complete FIR/CIR information below.

**Children's Insurance Rider and Family Insurance Rider Information:**

**A.**
- [ ] Mr.  [ ] Mrs.
- [ ] Miss  [ ] Ms.

| Spouse Information *(first, middle and last name)* | Birthdate | State of birth | Height |
|---|---|---|---|
| | | | |

**B.** Name(s) of children to be covered by rider *(must be under age 19 and unmarried)*  Physical/mental abnormalities *(If yes, explain)*

| Name (first) | (full middle) | (last) | Birthdate | Sex | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

**C.** Has anyone listed above received treatment for any disease, physical or mental condition in the past five years?
[ ] Yes  [ ] No

**D.** Is this insurance intended to replace any existing insurance and/or annuity?  [ ] Yes  [ ] No

**E.** If yes to C or D above, explain here _____

**F.** Are there any children under the age of 19 and unmarried not listed above  [ ] Yes  [ ] No
If yes, list name, birthdate and reason for exclusion _____

31426C

2

25-013651

# Section B

## 1. Life Insurance Premiums

| Amount of scheduled/ annual premiums | Amount paid with application | Lump-sum amount to be paid on delivery of policy | Premium Payment Frequency |
|---|---|---|---|
| $ 3,000 | $ 1,575 | $ — | ☐ Monthly ☐ Quarterly<br>☐ Semiannually ☑ Annually |

Method of Payment: ☐ New Bank Authorization ☐ Add to Existing Bank Authorization IDS account No. ☐
(BA can be set up for **monthly** or **quarterly** frequencies only. Complete attached BA form.)

☑ Direct Billing ☐ Other _____

## Life Insurance Beneficiary

**Option A.** Beneficiary is Insured's designated spouse, if living; otherwise the beneficiaries are the living lawful children of the Insured and they will receive equal shares of the proceeds.

**Option B.** Beneficiary is Insured's designated spouse, if living; otherwise, the beneficiaries are the living lawful children of the Insured and they will receive equal shares of the proceeds; provided, however, that if a child of the Insured has died before the Insured, the share which the child would have received if he/she survived the Insured will be paid to his/her living lawful children in equal shares.

**Option C.** Other designation

| Insured: | OIR: |
|---|---|
| ☑ Option A   ☐ Option B   ☐ Option C | ☑ Option A   ☐ Option B   ☐ Option C |
| For Option A or B:<br>Insured's spouse's full name _____ | For Option A or B:<br>OIR's spouse's full name _____ |
| Option C: Other designation _____ | Option C: Other designation _____ |
| Relationship to Insured _____ | Relationship to OIR _____ |

## Juvenile Insurance

Did the planner see this child?    Is there similar insurance in force or applied for on all brothers and sisters?

☐ Yes  ☐ No          ☐ Yes  ☐ No    If not, why? _____

Amount of life insurance already in force on the person responsible for child's primary support $ _____

X _____    X _____    _____
Signature of Parent or Legal Guardian        Signature of Witness              Date

26C                                  3                              (8/94)

# Section C

## I. Disability Income Insurance Plan

**Monthly Benefit**
$ *1,500 BASE + 580 SBR*

**Insured's Occupation Class**
☐ 1A ☐ 2A ☐ 3A
☑ 4A ☐ 5A

**Waiting Period**
☐ 30 days ☐ 60 days ☑ 90 days
☐ 180 days ☐ 365 days

**Duration of Benefit**
☐ 1 yr ☐ 3 yrs ☐ 5 yrs ☑ to age 65

**Multiple Case Discount**
☐ Yes ☑ No

**Premium Pattern**
☑ Level ☐ Step Rate

Employer Plan Coverage Unisex Rates: *(two participants and employer billing required)* ☐ Yes ☐ No *NA*

**Disability Provision** *Occupation Classes 1A, 2A & 3A:* ☐ 2 Years Occupation Protection
*Occupation Classes 4A & 5A:* ☐ 5 Years Occupation Protection ☐ Gradual Recovery Benefits
☑ Gradual Recovery Benefits and Occupation Protection Option

## Disability Underwriting Information

*Registered Dental Hygienist*

A. Complete description of job duties Years of service [ 7 ] Number of hours worked per week [ 36 ]

*dental xrays exposure & development. Dental Education*
*Dental prophylaxis*

If self-employed: 1. Date business began [ ] Number of employees [ ]
2. What % of duties are supervisory? [ ]

B. Any contemplated change in occupation? ☐ Yes ☑ No If yes, explain [ ]

C. Previous occupation if changed in the past five years [ ]

D. Amount of unearned income $ [ ] Source [ ]

E. Is the insured a member of a State, Public, or Federal Retirement System? ☐ Yes ☑ No
If yes, which one? [ ]

F. Does the insured have any Disability Income Insurance through his/her employer?
☐ Yes ☑ No If yes, complete questions a-c below:
a. Short-term at $ [ ] per month for [ ] months and [ ] day waiting period
b. Long-term at $ [ ] per month for [ ] years and [ ] day waiting period
c. Is the group disability integrated with Social Security? ☐ Yes ☐ No

G. Will the Insured's employer be paying the premiums for the IDS Life Disability Insurance? ☐ Yes ☑ No

H. Is the insured eligible for benefits from a required state Cash Sickness disability program? ☐ Yes ☑ No

26C₅

4

(8/94)

# Section C

## 3. Disability Income Insurance Riders

- [ ] Other [_____]
- [✓] Social Benefits Rider $ **580** per month with waiting period of **90** days.
- [·] Supplemental DI $ [_____] per month for [_____] months and [_____] day waiting period
- [ ] Cost-of-Living Maximum % _____ (classes 2A, 3A, 4A and 5A)
- [✓] Future Purchase Option $ **200** per option and **10** number of options (3A, 4A & 5A)
  - or Pool Amount $ [_____] (2A, 3A, 4A, 5A)
- [strikethrough] Lifetime Benefits (4A, 5A)
- [ ] Hospital Indemnity $ [_____] per month

- [ ] Accidental Death and Dismemberment (AD&D) $ [_____] Complete AD&D Beneficiary information below

### AD&D Beneficiary

- [ ] Option A  [ ] Option B    Insured's spouse's full name [_____]
- [ ] Option C  Other designation

[_____]
[_____]
[_____]

Relationship to Insured [_____]

## 4. Disability Income Insurance Premiums

| Annual premiums | Amount paid with application | Amount to be paid on delivery of policy | Premium Payment Frequency |
|---|---|---|---|
| $ **858.51** | $ **75.12** | $ | [✓] Monthly  [ ] Quarterly<br>[ ] Semiannually  [ ] Annually |

Method of Payment: [✓] New Bank Authorization  [ ] Add to Existing Bank Authorization IDS account No. [_____]
(BA can be set up for **monthly** or **quarterly** frequencies only. Complete attached BA form.)
[ ] Direct Billing  [ ] Other [_____]

## 1. Business Expense Protection Insurance Plan
(Cannot be applied for without personal Disability Income Protection in force or applied for.)
**Complete Disability Underwriting Information Section**

| Monthly Benefit | Insured's Occupation Class | Waiting Period | Benefit Pattern |
|---|---|---|---|
| $<br><br>**Submit BEPI Form 34591** | [ ] 3A  [ ] 4A  [ ] 5A | [ ] 30 days  [ ] 60 days<br>[ ] 90 days | [ ] Level<br>[ ] Increasing |

Multiple Case Discount  [ ] Yes  [ ] No

## 2. Business Expense Protection Insurance Premiums

| Annual premiums | Amount paid with application | Amount to be paid on delivery of policy | Premium Payment Frequency |
|---|---|---|---|
| $ | $ | $ | [ ] Monthly  [ ] Quarterly<br>[ ] Semiannually  [ ] Annually |

Method of Payment: [ ] New Bank Authorization  [ ] Add to Existing Bank Authorization IDS account No. [_____]
(BA can be set up for **monthly** or **quarterly** frequencies only. Complete attached BA form.)
[ ] Direct Billing  [ ] Other [_____]

## Section D

**Insured:**

Doctor or Clinic

1. St Josephs    Dr Redding

Patient or Clinic number    Phone number

(810) 254-8700

Address    City    State    Zip

51303 Schoener    Shelby Township  MI  48315

Date last seen    Reason last seen

Aug 94    Obgyn - mis carrage

2. Height  5-1   Weight  120

3. Have you consulted with, been tested for or treated by a doctor or medical practitioner for the following: (circle disorder for "Yes" answers)

A. Cancer or tumor, unusual fatigue, disorder of the muscles, bones, neck, back, joints, skin, liver, kidneys, urinary tract, digestive, or reproductive system? ☐ Yes ☑ No
Date of last consultation, test or treatment _____

B. Chest pain, disorder of the heart, circulation, high blood pressure, lung or breathing disorder, diabetes, epilepsy, stroke, loss of consciousness, paralysis, brain or nervous system? ☐ Yes ☑ No
Date of last consultation, test or treatment _____

C. Mental illness, depression, emotional disorder, alcohol or drug/substance abuse? ☐ Yes ☑ No
Date of last consultation, test or treatment _____

4. Have you ever tested positive for the AIDS (HIV) virus from the Elisa-Elisa-Western Blot testing procedure? ☐ Yes ☑ No
Date of last consultation, test or treatment _____

5. Within the past five years have you stayed overnight in a hospital or gone to an emergency room for any illness, or injury, been to a medical clinic, therapist or doctor, for a physical impairment or illness not listed above? ☑ Yes ☐ No
Date of last consultation, test or treatment _____
If yes, give reason:
Child Birth
_____
_____

6. Have you smoked cigarettes in the past 12 months? ☑ Yes ☐ No
Have you ever smoked cigarettes? ☑ Yes ☐ No
Date ceased smoking cigarettes _____
Have you used tobacco in any other form? ☐ Yes ☐ No
If yes, what is used? _____
What amount? Smoke ~ 1 pack / mo
Date last used? _____

---

**Other Insured Rider (OIR):**

Doctor or Clinic    MI

1. Dr LeFleur

Patient or Clinic number    Phone number

(810) 468-083/

Address    City    State    Zip

37520 S. Gratiot    Clinton Twp

Date last seen    Reason last seen

~ Aug 94    physical

2. Height  5-11   Weight  280

3. Have you consulted with, been tested for or treated by a doctor or medical practitioner for the following: (circle disorder for "Yes" answers)

A. Cancer or tumor, unusual fatigue, disorder of the muscles, bones, neck, back, joints, skin, liver, kidn, urinary tract, digestive, or reproductive system? ☐ Yes ☑ No
Date of last consultation, test or treatment _____

B. Chest pain, disorder of the heart, circulation, high blood pressure, lung or breathing disorder, diabet, epilepsy, stroke, loss of consciousness, paralysis, brain or nervous system? ☑ Yes ☐ No
Date of last consultation, test or treatment ~ Aug 9

C. Mental illness, depression, emotional disorder, al or drug/substance abuse? ☐ Yes ☑ No
Date of last consultation, test or treatment _____

4. Have you ever tested positive for the AIDS (HIV) vir from the Elisa-Elisa-Western Blot testing procedure ☐ Yes ☑ No
Date of last consultation, test or treatment _____

5. Within the past five years have you stayed overnigh hospital or gone to an emergency room for any illne or injury, been to a medical clinic, therapist or docto for a physical impairment or illness not listed above ☑ Yes ☐ No
Date of last consultation, test or treatment _____
If yes, give reason:
Asthma attack
_____

6. Have you smoked cigarettes in the past 12 months' ☐ Yes ☑ No
Have you ever smoked cigarettes? ☑ Yes ☐ No
Date ceased smoking cigarettes _____
Have you used tobacco in any other form? ☐ Yes
If yes, what is used? _____
What amount? _____
Date last used? _____

## Section E

**Insured:**

1. Do you have any current plans to travel outside of the United States?: ☐ Yes ☑ No
   If yes, where _____
   For how long _____ Reason _____

_____

2. During the past five years have you:

   A. Flown, or do you contemplate flying as a pilot, student pilot or crew member? ☐ Yes ☑ No

   B. Participated in or do you contemplate participating in motorcycle riding, racing (automobile, snowmobile, motorcycle, boat), skin/scuba diving, skydiving, hang-gliding, or other similar activities?
      ☐ Yes ☑ No
      If yes, what activity?

**OIR:**

1. Do you have any current plans to travel outside of the United States?: ☐ Yes ☑ No
   If yes, where _____
   For how long _____ Reason _____

2. During the past five years have you:

   A. Flown, or do you contemplate flying as a pilot, student pilot or crew member? ☐ Yes ☑ No

   B. Participated in or do you contemplate participating in motorcycle riding, racing (automobile, snowmobile, motorcycle, boat), skin/scuba diving, skydiving, hang-gliding, or other similar activities?
      ☐ Yes ☑ No
      If yes, what activity?

---

**Insured:**

3. Have you ever had an application for insurance declined, postponed or modified in any way? ☐ Yes ☑ No
   If yes, provide date |_____| Company name |_____|
   Reason |_____|

4. Will this insurance replace any existing insurance or annuity policies? ☑ Yes ☐ No
   If replacing an existing IDS policy, the cash value should be: ☐ rolled to the new IDS policy ☐ returned to the client

5. List any annuities, or life or disability income insurance currently in force or applied for

| Company name | Plan type | Policy number | Policy date | Ins. amount/ mo. income | D.I. yrs payable | ADB amount | Will this be replaced?* |
|---|---|---|---|---|---|---|---|
| MILICO TM | | ████ 3064 | 3/19/91 | $206,000 | | $ — | ☑ Yes ☐ No |
| (LISTED AS RIDER) | | | | $ | | $ | ☐ Yes ☐ No |
| | | | | $ | | $ | ☐ Yes ☐ No |

*If the insurance applied for will replace any existing insurance. Submit Replacement form(s) if required.

---

**Other Insured Rider (OIR):**

3. Have you ever had an application for insurance declined, postponed or modified in any way? ☑ Yes ☐ No
   If yes, provide date |Sept 94| Company name |American National|
   Reason |Asthma (is not covered under health ins., though policy was issued|

4. Will this insurance replace any existing insurance or annuity policies? ☑ Yes ☐ No
   If replacing an existing IDS policy, the cash value should be: ☐ rolled to the new IDS policy ☐ returned to the client

5. List any annuities, or life or disability income insurance currently in force or applied for:

| Company name | Plan type | Policy number | Policy date | Ins. amount/ mo. income | D.I. yrs payable | ADB amount | Will this be replaced?* |
|---|---|---|---|---|---|---|---|
| MILICO TM | | ████ 3064 | 3/19/91 | $300,000 | — | $ — | ☑ Yes ☐ No |
| (LISTED AS INSURED) | | | | $ | | $ | ☐ Yes ☐ No |
| | | | | $ | | $ | ☐ Yes ☐ No |

*If the insurance applied for will replace any existing insurance. Submit replacement form(s) if required.

# Financial Suitability Statement

**Variable Life/Variable Universal Life.** If you have applied for this type of insurance, check each of the following to acknowledge that you have received and read them:

☑ **Adequate information.** You have received the current prospectuses for the policy applied for and any funds involved.

☑ **Purpose.** You agree that this variable type of insurance is in accord with your insurance and financial objectives.
  ☑ You understand that there can be no assurance that such objectives will be achieved.
  ☑ Your risk tolerance for investment is: ☐ Low ☐ Medium ☐ High
  ☑ Your specific long-term goals and objectives:
    ☑ Protection  ☐ Tax Deferral  ☐ Capital Appreciation  ☐ Stability of Principal

☑ **Variable values.** The amount of Death Benefit and Policy Value can both increase and decrease; however, the Death Benefit will never be less than any Guaranteed Minimum Death Benefit.

☑ **Fees and charges.** The fees and charges *(including possible surrender charges)* have been explained to you and are also explained in detail in the policy.

**Life Protection Plus/Universal Life Insurance.** If you have applied for this type of insurance, you acknowledge that you have been informed that (1) the company may periodically change the current interest rate being credited on cash value and (2) that surrender charges may apply in certain circumstances.

**Authorization to Obtain Information — IDS Life Insurance Company**
You authorize any physician, medical practitioner, hospital, other medical facility, the Medical Information Bureau, employer, and consumer reporting agency having medical and other information about you and your minor children to give that information to the company or its reinsurer. You understand that the company will use this information to determine eligibility for insurance and benefits. You acknowledge that your medical records, including any alcohol or drug abuse information, may be protected by the Federal Alcohol and Drug Abuse Regulation 42 CFR Part 2.
You authorize the company to obtain investigative consumer reports on you and your minor children. You understand that you have the right to request ~~~~ view if an investigative consumer report is obtained.
You agree that a photograph ~~~~ uthorization will be as valid as the original.
You agree that this authoriza ~~~~ for two and one-half years from the date shown below.
You acknowledge that you h ~~~~ received a copy of this authorization.

**NOTE**

**Signatures** *(Insureds under age 15 need not sign.)*

| | | |
|---|---|---|
| **Insured (base plan)** | X _Juana ~~Gissendanner~~_ | **OIR Insured** X _Terry M Gissendanner_ |
| **FIR Spouse** | X | **OIR Insured** X |

**Owner's signature** *(omit if owner already signed as an Insured)* X

**Signed on** *(date)* ___ — ___ — ___ **, (state)** _____ **at (city)** X

## Receipt

All checks must be completed in full and be made payable to the company *(not to the representative)*.

Received from: X _JUANA GISSENDANNER_ the sum of $ _1650_ _12_ with this application.
☐ No money paid with this application.

## Representative's Report

Is Insured related to representative? ☐ Yes ☑ No If yes, give relationship _____

You certify that you personally requested the information in this application and witnessed its signing and received any money that was paid. You also certify that you truly and accurately recorded on the application the information supplied by the applicant. You are not aware of anything detrimental to the risk that is not recorded in this application.

To the best of your knowledge and belief this application ☑ does ☐ does not involve replacement of existing insurance or annuities.

| Licensed agent/ Representative's signature | X _Peter L. Hart_ | No. _88031-0_ | DO _081_ |
|---|---|---|---|
| Compensation _100_ % | Phone _(810) 827-1230_ | | Team ID _GST_ |

Representative's name *(print)* _PETER L. HART_

| Joint Representative's signature | X _NA_ | No. | DO |
|---|---|---|---|
| Compensation ___ % | Phone (   )   — | | Team ID |

Compensation percentages must equal 100%.

Indicate Fax No. (   )   —   if you want to receive status information via FAX instead of Telememo.

31426C

# Income Protection Plan

**Disability Income Insurance Policy**

- Non-cancellable and guaranteed continuable to age 65.
- Benefits paid for total and partial disability.
- Conditionally continuable to age 72.
- Nonparticipating (does not pay dividends).

IDS Life Insurance Company
IDS Tower 10
Minneapolis, Minnesota 55440

# EXHIBIT TWO

REDACTED



**RiverSource Life Insurance Company**
70100 Ameriprise Financial Center
Minneapolis, MN 55474
ameriprise.com

September 19, 2019

Policy Number(s):
████████ 9496 ████

Juana D Gissendanner
42353 Stanberry
Sterling Hts MI 48313-2514

Dear Juana Gissendanner,

We are writing to let you know we have completed our review of your disability income claim. You indicated on your Insured's Progress Report dated April 3, 2019 that you began working in July 1998. Based on this information, we requested formal job descriptions from your employers in order to determine the duties you are performing. We also requested your 2018 federal tax return, and you reported earned income on the return.

Your policy contains Partial Disability and Total Disability provisions. Your policy was previously considered under the Total Disability provisions. However, due to the recent information received, it appears that your benefits need to be calculated under the Partial Disability provision since you have been performing one or more of the important duties of your regular occupation as a dental hygienist. Please see the definition for Partial Disability below:

**Partial Disability**

Partial disability means that, although you perform one or more important duties of your regular occupation:

1. Because of injury or sickness, your monthly earnings are reduced to 80% or less of your monthly earnings before disability began; and
2. You are under the regular and personal care of a licensed physician other than yourself.

We have recalculated your benefits starting January 1, 2018. Your claim has been overpaid by $16,910.40. At this time we are not reviewing your claim for overpayment prior to January 1, 2018, however we reserve the right to do so.

We discussed the overpayment on September 19, 2019 by phone. As discussed the overpayment needs to be repaid within 10 months or by July 29, 2020. We request that you continue to send in your monthly earnings for all of your jobs in order to verify that you continue to meet the definition of disability. We will calculate the monthly benefits and apply them to your overpayment balance. We ask that you return the amount overpaid to you based on the payment information below.

**Payment information**

**Juana Gissendanner**

**Prior Earnings**

| | | |
|---|---|---|
| 1995 | $ | 34,214.00 |
| 1996 | $ | 40,306.00 |
| 2 years prior avg earn | $ | 3,105.00 |

| 2018 | Giss Enterprises (net) | Baker College (gross) | University of MI (gross) | Total Earned | Percent Loss | Benefit Paid | Correct Benefit | Overpayment Amt |
|---|---|---|---|---|---|---|---|---|
| January | | 866.25 | | 818.75 | 41% | 2,080.00 | 852.00 | 1,227.20 |
| February | $ 152.37 | $ 3,377.50 | $ 372.74 | $ 3,902.61 | 0% | $ 2,080.00 | $ - | $ 2,080.00 |
| March | (495.50) | 2,642.50 | 372.74 | 2,519.45 | 0% | $ 2,080.00 | $ - | $ 2,080.00 |
| April | $ 718.55 | $ 3,806.25 | $ 372.74 | $ 4,897.54 | 0% | $ 2,080.00 | $ - | $ 2,080.00 |
| May | 2,258.75 | | 372.74 | 2,995.45 | | $ 2,080.00 | | $ 2,080.00 |
| June | $ (130.09) | $ 595.00 | $ 372.74 | $ 837.65 | 73% | $ 2,080.00 | $ 1,518.40 | $ 561.60 |
| July | 2,621.91 | 742.50 | 372.74 | 2,738.40 | | $ 2,080.00 | | $ 2,080.00 |
| August | $ (302.01) | $ 148.75 | $ 372.74 | $ 219.48 | 93% | $ 2,080.00 | $ 1,934.40 | 145.60 |
| September | (355.91) | 1,983.75 | 372.74 | 2,599.58 | | $ 2,080.00 | | |
| October | 769.70 | 1,408.75 | 372.74 | 2,551.19 | 18% | $ 2,080.00 | | 2,080.00 |
| November | 1,921.75 | | 372.74 | 4,818.55 | | $ 2,080.00 | | 1,031.60 |
| December | $ (548.14) | $ 1,181.25 | $ 372.74 | $ 1,005.85 | 68% | $ 2,080.00 | 852.00 | 1,227.20 |
| **2018 TOTAL** | $ 3,760.14 | $ 19,731.25 | $ 4,472.88 | $ 27,964.27 | | $ 24,960.00 | $ 7,571.20 | 17,388.80 |

| 2019 | Giss Enterprises (net) | Baker College (gross) | University of MI (gross) | Total Earned | Percent Loss | Benefit Paid | Correct Benefit | Overpayment Amt |
|---|---|---|---|---|---|---|---|---|
| January | (552.59) | | 372.74 | (85.48) | 100% | $ 2,080.00 | | 2,080.00 |
| February | $ (1,692.03) | $ 1,190.00 | $ 372.74 | $ (129.29) | 100% | $ 2,080.00 | 2,080.00 | |
| March | (221.07) | 2,397.50 | 372.74 | 1,550.17 | 50% | $ 2,080.00 | 1,040.00 | 1,040.00 |
| April | $ (1,791.75) | $ 3,596.25 | $ 372.74 | $ 2,177.24 | 30% | $ 2,080.00 | 624.00 | 1,456.00 |
| May | (75.47) | 585.75 | 372.74 | 694.52 | | $ 2,080.00 | | 27.80 |
| June | $ (869.83) | $ 420.00 | $ 372.74 | $ (77.09) | 100% | $ 2,080.00 | | (2,080.00) |
| July | (300.31) | 531.25 | 372.74 | 1,598.88 | 49% | $ 2,080.00 | 1,019.20 | (1,019.20) |
| August | | | | | | $ 2,080.00 | | |
| September | | | | - | | $ - | | |
| October | | | | - | | $ - | - | |
| November | | | | - | | $ - | - | |
| December | | | | - | | $ - | - | |
| **2019 TOTAL** | $ (7,392.99) | $ 10,018.75 | $ 2,609.18 | $ 5,234.94 | | $ 10,400.00 | $ 10,878.40 | (478.40) |

| **TOTAL OVERPAYMENT** | $ | 16,910.40 |
|---|---|---|



Claim payment amount you received:                    $35,360.00

Correct claim payment amount:                         $18,449.60

Overpayment amount we request you return:             $16,910.40

**Your next steps:**

- Mail a check for $16,910.40 to us using the enclosed envelope by July 29, 2020.
- Make your check payable to RiverSource Life Insurance Company and include the account number in the memo line of the check.

We apologize for any inconvenience this may have caused.

**If you have any questions, please contact:**
- Your Claims Representative, **Julia M Eide,** at **612.671.2712**
- A RiverSource Life claims representative toll free at **888.320.8741**, Option 0, then enter extension **12712** Monday through Friday, 8 a.m. to 4 p.m. Central time.

Thank you for your prompt attention to this matter.

Sincerely,

Insurance Claims
Phone: 612.671.2712
Fax: **877.673.1075**

Enclosure: Return envelope

Issued by RiverSource Life Insurance Company, Minneapolis, Minnesota, and in New York only, by RiverSource Life Insurance Co. of New York, Albany, New York. Variable products are distributed by RiverSource Distributors, Inc., member FINRA. These companies are affiliated with Ameriprise Financial, Inc.
© 2018-2019 RiverSource Life Insurance Company. All rights reserved.

2176139CCCCLMSCOLLECTINS/10640534
000141613

# 2021-000464-CK GISSENDANNER, JUANA vs. RVERSOURCE LIFE INSURANCE COMPANY JT

- Case Type:
- CK-CONTRACTS
- Case Status:
- Open
- File Date:
- 02/04/2021
- DCM Track:
-
- Action:
- COMPLAINT FILED - CIVIL
- Status Date:
- 02/04/2021
- Case Judge:
- TOIA, JOSEPH
- Next Event:
-

| All Information | Docket | Party | Financial | Receipt | Disposition |

## Docket Information

| Date | Description | Docket Text | Amount Owed | Amount Due | File Ref Nbr. |
|---|---|---|---|---|---|
| 02/04/2021 | ENTRY FEE | ENTRY FEE  Receipt: 1275927  Date: 02/22/2021 | $150.00 | $0.00 | |
| 02/04/2021 | ELECTRONIC FILING SYSTEM FEE - CIVIL | ELECTRONIC FILING SYSTEM FEE - CIVIL  Receipt: 1275927  Date: 02/22/2021 | $25.00 | $0.00 | |
| 02/04/2021 | COMPLAINT/PETITION FILED - CIVIL | COMPLAINT/PETITION FILED - CIVIL  W/EXHBTS 1-2 JUANA GISSENDANNER (PLAINTIFF); RVERSOURCE LIFE INSURANCE COMPANY (DEFENDANT); | | | |
| 02/04/2021 | SUMMONS ISSUED | SUMMONS ISSUED **EXP 5/5/2021** | | | |
| 02/04/2021 | CASE PLACED ON E-FILING STATUS PER ADMINISTRATIVE ORDER 2010-6 | CASE PLACED ON E-FILING STATUS PER ADMINISTRATIVE ORDER 2010-6 | | | |
| 02/19/2021 | TRUEFILING PROOF OF SERVICE | TRUEFILING PROOF OF SERVICE (OBDH=94027292) | | | |
| 02/19/2021 | TRUEFILING PROOF OF SERVICE | TRUEFILING PROOF OF SERVICE (OBDH=94027369) | | | |

## Party Information

**GISSENDANNER, JUANA**
- PLAINTIFF

- DOB
- DOD
- Disposition
- Disp Date

Alias

**Party Attorney**
- Attorney
- LEHMAN, ARI W.
- Bar Code
- 68862

**More Party Information**

**RVERSOURCE LIFE INSURANCE COMPANY**
- DEFENDANT



- DOB
  - ○
- DOD
  - ○
- Disposition
  - ○
- Disp Date
  - ○

Alias

**Party Attorney**

**More Party Information**

## Financial Summary

| Cost Type | Amount Owed | Amount Paid | Amount Adjusted | Amount Outstanding |
|---|---|---|---|---|
| FILING FEE | $175.00 | $175.00 | $0.00 | $0.00 |
| Total          Total | Total $175.00 | Total $175.00 | Total $0.00 | $0.00 |

## Receipts

| Receipt Number | Receipt Date | Received From | Payment Amount |
|---|---|---|---|
| 1275927 | 02/22/2021 | GISSENDANNER, JUANA | $175.00 |
| Total | Total | Total | Total $175.00 |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| UNDISPOSED | | TOIA, JOSEPH |