UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUANA GISSENDANNER,

                          Plaintiff,

v.

RIVERSOURCE LIFE INSURANCE
COMPANY,

                          Defendant.

_____/

Case No. 2:21-cv-10731

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER
## GRANTING SUMMARY JUDGMENT MOTION [17]

Plaintiff Juana Gissendanner alleged that Defendant RiverSource Life Insurance Company breached a policy for disability benefits and denied her disability claim in bad faith. ECF 1-2. Defendant moved for summary judgment on the claims. ECF 17. Plaintiff opposed the motion. ECF 21. The Court ordered supplemental briefing to address Sixth Circuit precedent involving similar terms in a different disability insurance policy, ECF 30, and the parties complied, ECF 31; 32. For the following reasons, the Court will grant the summary judgment motion.[1]

## BACKGROUND

Plaintiff obtained disability income insurance from Defendant. ECF 21-2. The policy provided benefits based on "partial disability" and "total disability." *Id.* at 284–85. Partial disability applies "although you perform one or more important duties of

_____

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

1

your regular occupation." *Id.* at 283. Total disability applies if "you are . . . [u]nable to perform the important duties of your regular occupation." *Id.* The policy included an "Occupational Protection Option." *Id.* at 284. The Option allowed Plaintiff to "qualify as totally disabled even if [she] work[s] outside of [her] regular occupation." *Id.* The policy provided an example about how the option works. *Id.* "[S]uppose that your regular occupation is 'neuro-surgeon.' Suppose you become disabled. If you cannot perform neuro-surgery, but can teach neuro-surgery at a medical school, we would still consider you totally disabled and eligible for the total disability benefit." *Id.*

In Plaintiff's insurance application, she explained that she worked as a dental hygienist. ECF 17-3, PgID 165, 168. Her job duties involved: "dental xrays [sic]"; "exposure & development"; "dental education"; and "dental prophylaxis." *Id.* at 168; *see also* ECF 17-4, PgID 189.

Plaintiff was later injured in a car accident. ECF 17-4, PgID 176. At the time, she was working as a dental hygienist. *Id.* She promptly made a claim under the disability policy. ECF 17-5. In her claim form, she detailed her job duties that included everything from cleanings (prophylaxis), preliminary examinations, dental radiographs, and more besides. ECF 17-6, PgID 197.

Defendant then paid Plaintiff total disability benefits under the policy starting in 1997. ECF 17-4, PgID 190. Each year, Defendant reviewed Plaintiff's disability status and sought documents from Plaintiff to confirm that she was still qualified for the policy's total disability benefits. *Id.*

2

Since 1998, Plaintiff has worked as a volunteer in the same dentist office, but she kept the same title of "Dental Hygienist." ECF 17-4, PgID 177. Plaintiff has also maintained a dental-hygienist license. *Id.* While working in the dentist office, Plaintiff has done many of the same tasks she did before the accident. *Id.* at 178–79 (explaining that she performs dental prophylaxis, x-rays, and radiographs). Plaintiff explained that these tasks were part of her "occupational therapy." *Id.* at 178.

Plaintiff has also taught dental hygiene at various colleges. *Id.* at 177. As an instructor, she shows students how to perform dental procedures by doing them herself. *Id.* at 183 ("I show them how . . . to do something and I watch them execute it on their patient."). Plaintiff's profile on the University of Michigan's website represents that she "continue[s] to practice clinical dental hygiene part-time in Southfield, MI." ECF 17-5, PgID 226.

In the 2019 review of Plaintiff's disability, Defendant determined that she was no longer totally disabled under the policy and was only eligible for partial disability benefits. ECF 17-4, PgID 191; *see also* ECF 17-16, PgID 229–30. Defendant explained that the change occurred because Plaintiff had "been performing one or more of the important duties of [her] regular occupation as a dental hygienist." ECF 17-16, PgID 229.

## LEGAL STANDARD

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to

specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

The main issue for the breach of contract claim is whether Plaintiff is partially disabled under the policy. ECF 17, PgID 132–36. Defendant asserted that Plaintiff is partially disabled based on the policy's plain text. *Id.* But Plaintiff countered that the policy as a whole is ambiguous since the policy's partial disability and total disability terms conflict. ECF 21, PgID 263–69. Before resolving how to read the policy, the Court must first address Plaintiff's procedural arguments that Defendant is equitably

estopped and has waived all claims that Plaintiff is partially disabled under the policy. *Id.* at 270–72.

I.     <u>Waiver and Equitable Estoppel</u>

"[I]n certain situations, estoppel or waiver may operate to hold a defendant liable for coverage which may differ from the express terms of the contract." *Parmet Homes, Inc. v. Republic Ins. Co.*, 111 Mich. App. 140, 148 (1981) (citations omitted). The party asserting either defense bears the burden of proof. *Cadle Co v. City of Kentwood*, 285 Mich. App. 240, 255 (2009) (waiver); *Mid-Century Ins. Co. v. Fish*, 749 F. Supp. 2d 657, 677 (W.D. Mich. 2010) (estoppel).

The waiver argument here fails. Waiver is "the intentional and voluntary relinquishment of a known right." *Moore v. First Sec. Cas. Co.*, 224 Mich. App. 370, 376 (1997). "[A] valid waiver may be shown by express declarations or by declarations that manifest the parties' intent and purpose, or be an implied waiver, evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive." *Patel v. Patel*, 324 Mich. App. 631, 634 (2018) (quotation marks and quotations omitted). "Mere knowing silence generally cannot constitute waiver." *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 365 (2003).

Plaintiff knew that Defendant annually reviewed whether she qualified for the disability payments. ECF 17-4, PgID 190. And the policy's plain terms provide that only a corporate officer for Defendant could "waive any of [Defendant's] rights or requirements under th[e] policy." ECF 17-2, PgID 157. But Plaintiff identified no evidence that Defendant, through its corporate officers, either expressly or impliedly

waived any rights under the policy. *See* ECF 21, PgID 271. Rather, Plaintiff appeared to argue that Defendant's silence is enough for waiver. *See id.* ("[Defendant] had a known right that it could have tried to classify [Plaintiff] as partially disable[d] because she was performing occupation theory . . . [b]ut it chose not to."). Because "[m]ere knowing silence" cannot constitute waiver, Plaintiff has failed to meet her burden and the Court will reject the waiver argument. *Quality Prod. & Concepts Co.*, 469 Mich. at 365.

The Court will also bar the estoppel argument. "[E]stoppel is an equitable defense which prevents one party to a contract from enforcing a specific provision of the contract." *Fish*, 749 F. Supp. 2d at 677 (citing *Morales v. Auto-Owners Ins. Co.*, 458 Mich. 288, 295 (1998)). But estoppel will not "broaden the coverage of a policy to protect the insured against risks that were not included in the policy or that were expressly excluded from the policy." *Kirschner v. Process Design Assocs., Inc.*, 459 Mich. 587, 594 (1999) (citations omitted).

"For equitable estoppel to apply against an insurer in favor of an insured, the party asserting estoppel must establish" three elements. *Fish*, 749 F. Supp. 2d at 677 (collecting cases). First, "the insurer's actions or representations induced the insured to believe that an otherwise applicable . . . clause would not be invoked and that coverage would be provided." *Id.* (citations omitted). Second, "the insured justifiably relied on this belief." *Id.* (citations omitted). And third, "the insured was prejudiced by its reliance on this belief." *Id.* (citations omitted).

No evidence shows that the elements are satisfied, and Plaintiff pointed to no facts to suggest otherwise. *See* ECF 21, PgID 272. Defendant never told Plaintiff that it would not invoke a certain clause in the policy. Rather, Plaintiff testified that Defendant had requested she do occupational therapy to stay qualified for disability payments. ECF 17-4, PgID 190.[2]

Requiring Plaintiff to do occupational therapy is not enough to support an estoppel defense because it does not "fall within the two clear examples stated in *Kirschner*." *Livonia Pub. Schs. v. Selective Ins. Co. of the Se.*, 443 F. Supp. 3d 815, 855 (E.D. Mich. 2018). For one, Defendant is not "raising new defenses" after it had "denied coverage to [Plaintiff] and stated its defenses." *Kirschner*, 459 Mich. at 593 (citations omitted). For another, Defendant has not breached its "duty to give reasonable notice to the insured that it is proceeding under a reservation of rights." *Id.* (emphasis and citation omitted). In short, the evidence does not conform to the situations that the Michigan Supreme Court has recognized a valid estoppel defense. *Id.* at 190–91; *see Fish*, 749 F. Supp. 2d at 677 (citation omitted). The Court will therefore bar the estoppel defense.

## II.   ‘Partial Disability’ under the Policy

Interpreting an insurance policy is a question of law the Court must resolve. *Leonor v. Provident Life & Accident Co.*, 18 F. Supp. 3d 863, 870 (E.D. Mich. 2014)

---

[2] Defendant disputed that it required Plaintiff to do occupational therapy. ECF 21-4, PgID 355 (explaining that Defendant's insurance adjuster has "never required anybody to go through occupational therapy to continue their benefits"); ECF 21-5, PgID 369 (suggesting that Plaintiff's doctor ordered the occupational therapy).

(Cleland, J.) (citations omitted), *aff'd*, 790 F.3d 682, 687 (6th Cir. 2015). In Michigan, an insurance policy "must be enforced as written where there is no ambiguity." *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 354 (1999) (citation omitted). A policy's terms are read "as a whole" and in its "plain language." *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63 (2000) (citations omitted). Indeed, courts lack the authority to change clear policy terms under Michigan law. *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 461 (2005). To that end, "[a]ny clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." *Id.* at 483 (emphasis omitted) (alteration in original) (quoting *Raska v. Farm Bureau Mut. Ins. Co. of Mich.*, 412 Mich. 355, 361–62 (1982)).

Plaintiff argued that the terms "total disability" and "partial disability" are ambiguous because, when read together, the terms conflict. ECF 21, PgID 264–65. But Defendant argued that "the partial disability and total disability provisions are mutually exclusive," rendering the policy language unambiguous. ECF 31, PgID 455.

Sixth Circuit precedent requires the Court to find that the two definitions do not conflict. The present policy uses similar wording as the policy in *Leonor*, 18 F. Supp. 3d at 867. Judge Cleland found that the definitions of "total disability" and "residual disability"[3] in a Michigan insurance policy were ambiguous. *Id.* at 875–76. On appeal, the Sixth Circuit affirmed and held that the "definition of Total Disability is ambiguous and can reasonably be understood to cover an injury that prevents the

---

[3] Insurance contracts label partial disability policies as "residual disability" policies. *See id.* at 874 (citing *Canu v. Nat'l Life Ins. Co.*, No. 12-12838, 2013 WL 1883534, at *6 (E.D. Mich. May 6, 2013)).

insured from performing most, if not all, of the important duties of her pre-injury occupation." *Leonor*, 790 F.3d at 687.

That said, the terms in the present policy differ from the *Leonor* policy because in the present policy, 'partial disability' and 'total disability' have mutually exclusive definitions. *See id.* at 691 ("Because the two categories must be mutually exclusive for the policies to make sense, there must be some dividing line beyond which any additional degree of disability makes an otherwise residually disabled person totally disabled.") (citation omitted). To be sure, the present policy defines partial disability in the affirmative while the *Leonor* policy defined partial disability in the negative. ECF 21-2, PgID 283 ("Partial disability means that, although you perform one or more important duties of your regular occupation . . . ."); *Leonor*, 790 F.3d at 684 ("You are *unable* to perform one or more of the important duties of Your Occupation.") (emphasis added). Because both policies define total disability in the negative, the present policy is mutually exclusive while the *Leonor* policy is not. ECF 21-2, PgID 283 (Total disability applies if "you are . . . *[u]nable* to perform the important duties of your regular occupation.") (emphasis added); *Leonor*, 790 F.3d at 684 ("You are *unable* to perform the important duties of Your Occupation.") (emphasis added). It follows that the present policy does not suffer from the same ambiguity as the *Leonor* policy and the 'partial disability' definition does not conflict with the 'total disability' definition. Because the two definitions do not conflict, the plain partial disability definition applies to Plaintiff if she can perform at least one important duty of her regular occupation. *See* ECF 21-2, PgID 283.

Yet Plaintiff also suggested that the partial disability definition conflicts with the terms of the Occupation Protection Option. ECF 21, PgID 264, 266–68; ECF 32, PgID 511. But the Option does not conflict with the partial disability definition.

The Option allowed Plaintiff to "qualify as totally disabled even if [she] work[s] outside of [her] regular occupation." ECF 21-2, PgID 284. For Plaintiff, if she "cannot perform [dental hygienist tasks], but can teach [dental hygiene,]" then she would still be considered "totally disabled." *Id*. Thus, the Option's plain text would declare Plaintiff totally disabled, if she could teach only through oral instruction but could not physically perform dental hygienist tasks. To that end, the Occupation Protection Option does not conflict with the partial disability definition. *See id*.

And in any event, the evidence showed that Plaintiff performed dental hygienist procedures while she taught. ECF 17-4, PgID 183 ("I show them how . . . to do something and I watch them execute it on their patient."); *see also id*. at 178 (explaining that she performs dental prophylaxis, x-rays, and radiographs). Because Plaintiff could perform dental hygienist tasks, the Occupational Protection Option is irrelevant. *See* ECF 21-2, PgID 283–84.

The Court will therefore grant summary judgment to Defendant. Because the policy's definitions are clear and do not conflict with one another or the Occupational Protection Option, the Court must enforce the policy's plain terms. And because Plaintiff can perform an actual duty of her regular profession, she is partially disabled under the policy.

III.   Bad-Faith Denial of Insurance Claim

Defendant also moved for summary judgment on the bad-faith denial of the insurance claim because Michigan does not recognize it as a cause of action. ECF 17, PgID 136–40. The Court agrees. "[T]he Michigan Supreme Court held that an insurer's dilatory handling of its client's claim constituted 'bad faith,' but did not create a cause of action separate from the underlying contract." *Benkert v. Med. Protective Co.*, 842 F.2d 144, 148 (6th Cir. 1988) (quoting *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 608 (1985)). Indeed, the Michigan Court of Appeals has confirmed that "[a] plaintiff cannot maintain an action in tort for nonperformance of a contract. There must be a separate and distinct duty imposed by law. An alleged bad-faith breach of an insurance policy does not state an independent tort claim." *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 401–02 (2006). The Court will thus grant summary judgment to Defendant on the bad-faith denial of insurance claim.

IV.   Attorney's Fees

Defendant next moved for summary judgment as to Plaintiff's claim for attorney's fees based on the breach of contract. ECF 17, PgID 137–38. "Michigan law is clear that an insured is not entitled to recover such fees as an element of damages against an insurer for breach of contract." *Shathaia v. Travelers Cas. Ins. Co. of Am.*, 984 F. Supp. 2d 714, 728 (E.D. Mich. 2013) (collecting cases). Because the only claim at issue was for breach of contract, the Court must grant summary judgment for Defendant as to the request for attorney's fees.

11

V.    <u>Punitive Damages</u>

Last, Defendant moved for summary judgment on the claim for punitive damages. ECF 17, PgID 140–41. Defendant stressed that punitive damages are not a stand-alone cause of action. *Id.* at 140. And Defendant is correct. "Absent allegation and proof of tortious conduct *existing independent of the breach*, exemplary damages may not be awarded in common-law actions brought for breach of a commercial contract." *Kewin v. Mass. Mut. Life Ins. Co.*, 409 Mich. 401, 420–21 (1980) (emphasis added) (internal citation omitted). Yet Plaintiff showed no tortious conduct by Defendant that "exist[ed] independent of the breach." *Id.* at 420; *see* ECF 21, PgID 273–74. The Court will therefore grant summary judgment to Defendant on the punitive damages claim. In sum, the Court will grant the summary judgment motion in full and dismiss the case against Defendant with prejudice.

**WHEREFORE**, it is hereby **ORDERED** that the summary judgment motion [17] is **GRANTED**.

**IT IS FURTHER ORDERED** that the case against Defendant is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 8, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 8, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager